**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES ex rel. TRAMEL FOREMAN, (#R28958), | )<br>)<br>) |
| Petitioner, | )<br>) |
| v. | ) Case No. 11 C 0469<br>)<br>) |
| MARCUS HARDY, Warden, Stateville Correctional Center, | )<br>)<br>)<br>) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Tramel Foreman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d).[1] For the following reasons, the Court denies Foreman's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

Foreman does not present clear and convincing evidence challenging the statement of facts in the last state court decisions to address his arguments on the merits, which are the Illinois Appellate Court's opinions on direct appeal and post-conviction appeal, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Foreman,* 361 Ill.App.3d

---

[1] Instead of filing a reply brief that was due on July 11, 2011, Foreman filed a motion to stay the proceedings based on his alleged unexhausted claims on July 12, 2011. Because Foreman has already exhausted all of his habeas claims, the Court denies his motion to stay. *See Rhines v. Weber,* 544 U.S. 269, 277-78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The Court further denies Foreman's motion for appointment of counsel as moot.

136, 297 Ill.Dec. 19, 836 N.E.2d 750 (Ill.App.Ct. 2005) and *People v. Foreman,* No. 1-08-2159 (Ill.App.Ct. June 25, 2010) (unpublished). The Court now turns to a summary of the trial evidence. *See Allen v. Buss,* 558 F.3d 657, 659 (7th Cir. 2009).

## I. Factual Background

At trial, Lance Davis ("Lance"), who was the cousin of the victim Larry Lowrey, testified that at 11:15 p.m. on September 26, 2001, he drove to the intersection of 49th and Michigan in Chicago and parked at a church on the corner. Lance then got out of his car and walked toward several men who were fighting across the street. As Lance walked toward the fight, he noticed that Foreman was sitting in the driver's seat of a tan station wagon parked down the street. When Lance reached the fighting, he joined in. Lance further testified that Foreman then drove to the location of the fight and yelled to Kevin Davis ("Kevin"), one of the participants in the fight, to get into the car. Kevin then got into the backseat of the car on the passenger side. A passenger in the front seat then leaned back as Foreman reached across and fired a gun two or three times out of the passenger-side front window. Foreman then drove away toward 49th Street and Wabash in Chicago. At the police station on September 27, 2001, Lance identified photographs of Kevin and Foreman.

Kevin, Foreman's cousin, testified at trial that on the evening of September 26, 2001, he drove to 49th and Michigan in Chicago to visit his girlfriend. As Kevin walked down the street, several men, including Lance, attacked him. Thereafter, Foreman drove up to the fight in his tan station wagon. Although Kevin testified that Foreman's girlfriend was sitting in the front seat of the car, at trial, Kevin could not recall if there was another passenger in the car. Kevin further testified that he got into Foreman's car through the back passenger-side door. As he was getting

into the car, Kevin testified that he heard shots being fired behind him. Kevin also testified at trial that Foreman had not fired the shots. Kevin, however, also admitted that he spoke with police officers following the shooting, but that he did not recall telling them that he saw Foreman's girlfriend, who was in the front passenger seat of the car, lean back after which Foreman fired a gun at the men. Kevin also did not recall his prior statement that as they drove away, Foreman stated that he let off a couple of shots and "got at least one" of the men.

Chicago Police Detective Michael Rose was assigned to the shooting in the early morning of September 27, 2001. Detective Rose testified that he interviewed Kevin, who stated that after he dove into the backseat of Foreman's car, Foreman's girlfriend, who was in the passenger seat of the car, leaned back and Foreman raised his right arm and fired three or four shots from a black handgun out of the front passenger window. Detective Rose further testified that Kevin stated that as they were driving away from the scene, Foreman told him that he had let off a couple of shots and that he "got at least one" of the men.

The victim's cousin, Gregory Curtis, also testified at trial stating that when he arrived at 49th and Michigan on September 26, 2001, the fight was already in progress. Curtis further stated that he had known Foreman for 10 years. Also, Curtis, who did not join the fight, testified that he watched Foreman drive to the scene of the fight. Curtis stated that thereafter Kevin got into the backseat of the passenger side of Foreman's car. Moreover, Curtis testified that Foreman's girlfriend was in the front passenger seat of the car and a woman named Sharon was in the backseat. After Kevin entered the car, Curtis saw Foreman's girlfriend lean back and heard two or three gunshots. Curtis testified that he and the other men dove to the ground. After Foreman drove away, the men realized that Lowrey had been shot.

3

Chicago Police Officer James Shader, who worked in the forensic services division of the Chicago Police Department, was assigned to the shooting in the early morning of September 27, 2001. Officer Shader first reported to the Cook County Hospital, where Lowrey had been taken, but learned that Lowrey had since died. Officer Shader subsequently proceeded to the crime scene where he was unable to find a gun or shell casings. Dr. Scott Denton, a forensic pathologist and deputy medical examiner, testified at trial that the cause of Lowrey's death was a gunshot wound to the chest. After the State rested, defense counsel did not call any witnesses.

## II.      Procedural Background

Following a jury trial in the Circuit Court of Cook County, the jury found Foreman guilty of two counts of first degree murder and discharging a firearm during the commission of the offense. The trial court then sentenced Foreman to 50-year prison terms for the two murder convictions, to be served concurrently. The trial court also sentenced Foreman to an additional 25 years pursuant to the Illinois firearm enhancement provision, 730 ILCS 5/5-8-1.

Foreman filed a direct appeal to the Illinois Appellate Court bringing the following claims: (1) his trial counsel was ineffective for failing to question the venire regarding any potential bias; (2) the trial court's supplemental instructions to the deadlocked jury were coercive; (3) the sentencing court's application of Illinois' firearm enhancement was improper; (4) his two murder convictions violated Illinois' one-act, one-crime rule; (5) he was entitled to an additional day of credit against his sentence; and (6) the trial court's instruction to the venire failed to comply with Illinois Supreme Court Rule 431(a). On September 22, 2005, the Illinois Appellate Court affirmed Foreman's conviction on one murder count and vacated his conviction on the other murder count based on Illinois' one-act, one-crime rule. Although the Illinois

4

Appellate Court vacated the one murder conviction, it did not remand for re-sentencing. The Illinois Appellate Court rejected Foreman's other appellate arguments – except for his argument that he was entitled to an additional day of credit.

Thereafter, Foreman filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois arguing that: (1) the trial court's supplemental instructions to the deadlocked jury were coercive; and (2) the trial court's instruction to the venire failed to comply with Illinois Supreme Court Rule 431(a). On January 24, 2007, the Supreme Court of Illinois denied Foreman's PLA.

On November 27, 2007, Foreman filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*. In his pro se post-conviction petition, Foreman argued that his trial counsel was constitutionally ineffective for failing to call two alibi witnesses, Darren Jones and Qiana Acklin, at trial. In support of his claim, Foreman provided affidavits from these witnesses in which they averred that they were playing cards at Jones' residence with Foreman at the time of Lowrey's murder. The trial court summarily dismissed Foreman's post-conviction petition.

Foreman appealed the trial court's summary dismissal of his post-conviction petition to the Illinois Appellate Court arguing that his trial counsel was constitutionally ineffective for failing to call the two alibi witnesses. On June 25, 2010, the Illinois Appellate Court affirmed the trial court's summary dismissal concluding that trial counsel's decision not to call Jones and Acklin as alibi witnesses was sound trial strategy and that Foreman had failed to establish prejudice. Foreman then filed a PLA to the Supreme Court of Illinois maintaining that his trial counsel was constitutionally ineffective for failing to call the two alibi witnesses. On September 29, 2010, the Supreme Court of Illinois denied Foreman's post-conviction PLA.

5

**III.     Habeas Petition**

Foreman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) was docketed on January 21, 2011. Construing his pro se allegations liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Foreman's habeas claims include: (1) his trial counsel was ineffective for failing to (a) call Darren Jones and Qiana Acklin as alibi witnesses; (b) question the venire regarding potential bias, and (c) move to dismiss his indictment because he was indicted under a law that had yet to be enacted in Illinois; (2) the trial court's supplemental instructions to the deadlocked jury were coercive; (3) the sentencing court's application of Illinois' firearm enhancement was improper; (4) his convictions violated Illinois' one-act, one-crime rule; and (5) the trial court's instruction to the venire failed to comply with Illinois Supreme Court Rule 431(a).

## LEGAL STANDARDS

**I.     Habeas Standard**

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Brown v. Finnan,* 598 F.3d 416, 421 (7th Cir. 2010). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion

6

opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *Williams,* 529 U.S. at 405; *see also Brown,* 598 F.3d at 421-22.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case.  *See Williams,* 529 U.S. at 407; *Brown,* 598 F.3d at 422.  "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable.'"  *Bennett v. Gaetz,* 592 F.3d 786, 790 (7th Cir. 2010) (citation omitted); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original); *Wood v. Allen,* 130 S.Ct. 841, 849 (2010) (state court's factual finding not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance.").  To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion."  *Bennett,* 592 F.3d at 790 (citation omitted).  Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case.  *See Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009) (citation omitted).

## II.     Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'"  *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted).  In particular, a habeas

7

petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Gray v. Hardy,* 598 F.3d 324, 327 (7th Cir. 2010). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Ward v. Jenkins,* 613 F.3d 692, 696 (7th Cir. 2010).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Smith v. McKee,* 598 F.3d 374, 382 (7th Cir. 2010). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496; *see also Smith,* 598 F.3d at 387-88.

## ANALYSIS

### I. Independent and Adequate State Law Grounds

First, Respondent contends that Foreman procedurally defaulted his argument that the trial court improperly coerced the deadlocked jury to return a verdict based on the doctrine of

8

independent and adequate state law grounds. To clarify, "[f]ederal habeas corpus relief from a state conviction is not available when the decision rests on a state procedural ground independent of any federal issue and adequate to support the judgment." *Kerr v. Thurmer,* 639 F.3d 315, 321 (7th Cir. 2011). More specifically, Foreman failed to object to the trial court's supplemental instruction at trial, failed to raise this contention of error in his post-trial motion, and failed to move for a mistrial, therefore, the Illinois Appellate Court concluded that Foreman had waived this argument. Because Illinois waiver law constitutes an independent and adequate state law procedural ground, Foreman has procedurally defaulted this claim. *See Gray,* 598 F.3d at 329. Furthermore, because Foreman does not argue that cause and prejudice except his procedural default or that he is actually innocent, there are no grounds to excuse his procedural default of this claim. *See Gonzales v. Mize,* 565 F.3d 373, 381 (7th Cir. 2009). As such, the Court is precluded from reviewing the merits of this habeas claim on collateral review. *See Ward,* 613 F.3d at 696.

## II. Claims Not Cognizable on Habeas Review

Next, Respondent maintains that the following claims brought in Foreman's habeas petition are not cognizable on habeas review because they do not involve a federal or constitutional issue: (1) the state court's application of Illinois' twenty-five-to-life sentencing enhancement was improper; (2) Foreman's convictions violated Illinois' one-act, one-crime rule; and (3) the trial court's instructions to the venire failed to comply with Illinois Supreme Court Rule 431(a). Indeed, federal courts "may not grant habeas relief under 28 U.S.C. § 2254 merely because a state court has misinterpreted or misapplied state law." *Lopez v. Thurmer,* 594 F.3d 584, 587 (7th Cir. 2010); *see also Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002) ("an

9

error in the interpretation of ... the application of state sentencing rules does not present a cognizable claim for federal habeas relief"). As such, these arguments – which focus on the Illinois courts' application of Illinois law – are not cognizable on habeas review. Moreover, the Illinois Appellate Court already granted Foreman relief regarding his claim involving Illinois' one-act, one-crime rule by vacating one of his murder convictions. Therefore, Foreman's habeas claims based on the Illinois' courts application of Illinois law fail.

### III. Ineffective Assistance of Trial Counsel

Foreman next argues that his trial counsel provided ineffective assistance of counsel. To establish constitutionally ineffective assistance of counsel, Foreman must show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Foreman fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ....").

First, Foreman argues that his trial counsel was ineffective for failing to call Darren Jones and Qiana Acklin as alibi witnesses. In addressing this issue, the post-conviction Illinois Appellate Court reasoned:

> In this case, the record shows that counsel's decision not to call Acklin or Jones was a matter of trial strategy. . . . Although defense counsel listed Acklin as a witness before trial started, he obviously decided not to call her as a witness. Jones' name did not appear in the record as a potential witness, but his testimony would have provided the same alibi as Acklin. As indicated by counsel's opening and closing arguments, his trial strategy was to attack the credibility of the State's witnesses in order to show that [Foreman] was not the shooter. Although the testimony of Acklin and Jones may have supported counsel's argument that

> [Foreman] was not the shooter, defense counsel's decision not to present them as
> trial witnesses was sound given that every witness identified [Foreman] at the
> scene of the crime. Even Kevin Davis, who testified at trial that [Foreman] was
> not the shooter, still placed [Foreman] at the scene. Moreover, Kevin testified
> that [Foreman], his own cousin, extricated him from a beating by picking him up
> in a car which was also occupied by [Foreman's] girlfriend Acklin. Under the
> circumstances here, we cannot say that it is arguable that counsel's performance
> fell below an objective standard of reasonableness.

*People v. Foreman,* No. 1-08-2159, at 6-7.

The post-conviction Illinois Appellate Court further clarified that "even assuming that counsel's action in failing to call Acklin or Jones as witnesses could be unreasonable, [Foreman] has failed to show arguable prejudice." *Id.* at 7. The Illinois Appellate Court continued:

> As we found in [Foreman's] direct appeal, the evidence of his guilt was
> overwhelming. Lance Davis and Gregory Curtis testified that [Foreman] drove
> up to the fight, Kevin Davis got into [Foreman's] car, and then a passenger in the
> front seat leaned back while [Foreman] fired a gun out of the passenger-side front
> window. Moreover, Kevin Davis, who was the only witness to testify at trial that
> [Foreman] was not the shooter, placed him at the scene of the crime.

*Id.* (internal citation omitted).

Here, the Illinois Appellate Court's analysis of both the performance and prejudice prongs under *Strickland* are well within the boundaries of permissible differences of opinions. *See Ebert v. Gaetz,* 610 F.3d 404, 412 (7th Cir. 2010) (state court application of *Strickland* unreasonable "only when the state court's application of 'clearly established Federal law' is wholly outside the boundaries of permissible differences of opinion."). More specifically, the Illinois Appellate Court reasoned that trial counsel's decision not to call Jones and Acklin as alibi witnesses was sound trial strategy, especially in light of the fact that every other witness testified that Foreman was at the scene of the murder, whereas Acklin and Jones averred that Foreman was with them playing cards at Jones' house on the day of the murder. In addition, the

11

Illinois Appellate Court's conclusion that Foreman was not prejudiced by trial counsel's failure to call Acklin and Jones as witnesses was consistent with the facts and circumstances of the case due to the overwhelming amount of evidence that not only placed Foreman at the scene of the crime, but established that he fired a gun out of the passenger-side front window of his car. *See Williams,* 561 F.3d at 746. Accordingly, the Illinois Appellate Court's decision is not objectively unreasonable, and thus Foreman's ineffective assistance of counsel claim based on Jones and Acklin as alibi witnesses fails. *See Bennett,* 592 F.3d at 790.

Foreman also brings two additional ineffective assistance of trial counsel claims, namely, that his counsel was ineffective for failing to question the venire regarding potential bias and for failing to move to dismiss his indictment because he was indicted under a law that had yet to be enacted in Illinois. Foreman, however, has procedurally defaulted these claims because he did not raise them through one full round of state court review. *See Byers v. Basinger,* 610 F.3d 980, 985 (7th Cir. 2010); *Gray,* 598 F.3d at 327. More specifically, although Foreman brought his claim that trial counsel was ineffective for failing to question the venire about potential bias on direct appeal, he failed to bring this claim in his PLA to the Supreme Court of Illinois. *See Gray,* 598 F.3d at 330. Similarly, although Foreman brought his ineffective assistance of counsel claim based on his indictment in his post-conviction petition, he did not present this claim on appeal to the post-conviction Illinois Appellate Court nor in his post-conviction PLA to the Supreme Court of Illinois. *See id.* Moreover, Foreman does not present an exception to his procedural default, therefore, the Court cannot consider the merits of these clams. *See Ward,* 613 F.3d at 696; *Gonzales*, 565 F.3d at 381.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Foreman certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Foreman must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Reasonable jurists would not find the Court's procedural rulings nor the Court's conclusion that three of Foreman's claims are not cognizable on habeas review debatable. *See*

*id.* Moreover, jurists of reason would not debate that Foreman's ineffective assistance of counsel claims should have been resolved in a different manner. *See Miller-El,* 537 U.S. at 336. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Also, the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: July 14, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**